LIBERTO *et al. v.* STEELE *et al.*

(*Jackson,* April Term, 1949.)

Opinion filed June 18, 1949.

W. G. CAVETT, Memphis, for complainant.

ARMSTRONG, McCADDEN, ALLEN, BRADEN & GOODMAN, Memphis, SAM TAUBENBLATT, Memphis, for defendant.

MR. JUSTICE TOMLINSON delivered the opinion of the Court.

Petitioner for *certiorari*, Liberto et al., and respondents, Steele and wife, own adjoining lots fronting on Washington Avenue in Memphis and running back north to an alley. The Liberto lot is east of the Steele lot. Embraced within the total area of the two lots, and in or near the center thereof, is a strip fronting 7.6 feet on Washington Avenue and 14.3 feet on the alley to the rear. For more than forty years, this strip has been included within the description of the recorded deeds to Liberto, and his predecessors in title, but never within the description in the recorded deeds to Steele or his predecessors in title.

A Mrs. Lamar acquired ownership of the west (now Steele) lot in 1906. In 1907 she erected a servant's house on the north end of the above-mentioned strip. During the same year she erected a picket fence, commencing on Washington Avenue and running in a northerly direction to the alley. This fence is the east line of the aforementioned strip of land. That strip is, therefore, actually enclosed by this fence in the west (now Steele) lot, and has been so enclosed since 1907.

Mrs. Lamar erected this north-south fence in 1907 on what she honestly believed was the correct record boundary line between the two lots. She and her successors in title have since maintained this fence along this line continuously. The expense of such maintenance has at times been contributed to by some of the predecessors in title of Liberto. Mrs. Lamar and her successors in title have used and occupied this strip continuously since 1907 as a part of the west (now Steele) lot under the honest belief that it was a part of and within the record title description of that lot. That use and occupation has been open, notorious, exclusive and as a matter of

right. That asserted right has never been questioned until shortly prior to the commencement of this suit in October, 1947. However, taxes had always been paid by the respective owners without increase or diminution on account of this strip and in ignorance of the true situation.

Liberto did not inspect the east lot before purchasing it; nor did he have the title examined. Subsequently, and as a preliminary to the erection of a business building, he had his lot surveyed. It was thereby discovered that the strip in question was embraced within the description of Liberto's deed, but not within Steele's deed.

When Liberto began to tear down this fence Steele and wife filed the present injunction bill. By this bill, and as amended, they plead ownership of this strip by reason of open, notorious, adverse and exclusive possession thereof for more than forty years, and that such possession has barred the defendant from maintaining any claim against this property. The bill as amended sought a decree so adjudging. By answer and cross-bill these allegations were denied and a decree declaring Liberto the owner of this strip of land was sought.

Since the case turns upon a question of law on undisputed facts, nothing will be gained by a recitation here of the procedure, steps taken, etc., in the Chancery and Appellate Court in developing this question of law for presentation and decision. It is sufficient to go directly to the question.

It was held by the Court of Appeals that the evidence of open, notorious and exclusive possession and use as the true owners of all the land inclosed by the fence for the requisite period of time is uncontradicted; that, therefore, the Chancellor should not have submitted any issue

to the jury, *DeRossett Hat Co.* v. *London Lancashire Fire Ins. Co.*, 134 Tenn. 199, 207, 183 S. W. 720, but should have sustained Steele's bill and held them to be the owner in fee by adverse possession. Liberto has filed this petition for *certiorari* and assigns the holding of the Court of Appeals as error.

It is the insistence of petitioner, Liberto, that "where possession is under a mistake as to the true location of a boundary line, and the possessor intends to claim only to the true line wherever it may be, his possession is not adverse and it cannot establish title in him, no matter how long continued."

He says that this is the law almost everywhere. His petition cites cases from eighteen States, other than Tennessee, in support of this insistence.

Respondent Steele insists that open, notorious and exclusive possession of the entire inclosure under a claim of right for the number of years required by law is sufficient to vest title by adverse possession, notwithstanding the fact that such possession and claim was due to an honest mistake as to the location of the true boundary.

In 97 A. L. R., page 36, the annotator makes this statement:

"That the trend of opinion is against disturbing him whose visible boundaries have existed for the period of the Statute of Limitations is illustrated in many cases in which possession has been held sufficient to vest title in the possessor, the claim of right or intention to possess adversely being evidenced by unequivocal acts of ownership. In such cases it is immaterial that the holder supposed the visible boundary to be correct, or, in other words, the fact that possession was due to ignorance or mistake is immaterial."

He purportedly supports the above text with citations to cases from twenty-nine States, other than Tennessee.

The cases from other jurisdictions cited by petitioner and by the aforementioned A. L. R. text have not been considered because the question seems to have been conclusively settled by our cases.

The question made here arose in *Erck* v. *Church*, 87 Tenn. 575, 11 S .W. 794, 4 L. R. A. 641. The Court, after stating that there is a conflict of opinion upon the question in different states, and after discussion of the principle involved, and citation of a Connecticut case, *French* v. *Pearce*, 8 Conn. 439, 21 Am. Dec. 680, held:

"It is manifest from the proof in this cause that Warner and Church intended to hold all the ground embraced by their fences as their own. Such possession was adverse under our statutes, whether it was by mistake as to the real boundaries or not; and, if continued for seven years, it would bar an action for recovery of the land so held." 87 Tenn. page 580, 11 S. W. page 795.

The seven year statute referred to is our Code section 8584. The holding just quoted was *dicta* since it was further found as a fact that Church had not been in possession for seven years.

The question again arose in *Williams* v. *Hewitt*, 128 Tenn. 689, 164 S. W. 1198. It was held:

"It is perceived that the question involved is whether the mistaken or accidental inclosure of the strip in controversy by Halloran, and the subsequent holding of the same by his privies in title for more than 7 years, have formed a bar to the complainant's right of action. On the authority of *Erck* v. *Church*, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641, we must hold that the complainant's

suit is barred." 128 Tenn. page 691, 164 S. W. page 1199.

Our Court of Appeals' decision in *Gibson* v. *Shular*, decided in 1946 and reported in 194 S. W. (2d) 865, 866, *certiorari* denied, was a case in which the adjoining owners had considered the fence as the dividing line for more than twenty years, and there was an absence of any intention "to build the fence over on the other's land." The holding of the Court, 194 S. W. (2d) page 867, was:

"The fact that the occupant might, if he knew that he was on his neighbor's land, recognize and accede to the latter's title, does not affect the adverse character of his possession, where, because there has never been any question or doubt as to the location of the boundary, he possesses and uses the property as his own, and does not recognize or accede to any superior title,"

In the Court of Appeals' opinion of *Peoples* v. *Hagaman*, 215 S. W. (2d) 827, 829, *certiorari* denied December 12, 1948, on the authority of *Erck* v. *Church* and *Williams* v. *Hewitt*, it was held:

"The rule is that where a purchaser of land accidentally or by mistake incloses a contiguous strip, believing he is placing the fence on the boundary, and holds the inclosed strip for 7 years, his possession is adverse, and will avail against the true owner."

This opinion contains a fine discussion of previous cases.

It is earnestly urged in petitioner's brief that *Erck* v. *Church* and *Williams* v. *Hewitt* are not in accord with other holdings of this Court, and should not be followed, and that the decision of the Court of Appeals in *Peoples* v. *Hagaman, supra,* which followed the holding of *Erck* v. *Church* and *Williams* v. *Hewitt*, should be overruled.

*Buchanan* v. *Nixon*, 163 Tenn. 364, 43 S. W. (2d) 380, 80 A. L. R. 151, states that probably all our cases on the subject are cited in *Williams* v. *Hewitt*, 128 Tenn. 689, 164 S. W. 1198. Indispensable, of course, to an accurate analysis and comparison of the holdings in the cases cited in *Williams* v. *Hewitt* and the holding in the case at bar, is a keeping in mind of the actual controlling facts in each of these cases. In the case at bar Steele's predecessors erected the fence in question and Steele and his predecessors have been in actual possession and use for more than forty years of all the land embraced within the inclosure of this fence.

*Gates* v. *Butler*, 22 Tenn. 447, cited by *Williams* v. *Hewitt*, was a case in which there was actual possession for more than seven years of only a part of the land claimed by adverse possession. The Court held that under those circumstances "the accidental and unintended inclosure of a small part of the land for seven years" was insufficient to establish the claim. That case is not in point.

Next comes *Coal Creek Mining & Mfg. Co.* v. *Ross*, 80 Tenn. 1. The tract of land there claimed was held by the claimant by an inferior grant with actual possession of part of the land so granted. That case is not applicable.

Then comes the controversial case of *Erck* v. *Church*, 87 Tenn. 575, 11 S. W. 794, 4 L. R. A. 641. The facts of that case are like those of the case at bar. The rule stated on the question now being considered was *dicta*, as heretofore observed.

Next is *Kirkman* v. *Brown*, 93 Tenn. 476, 27 S. W. 709. Claimants owned a 40 acre tract. Beyond the borders of one side of this tract claimants cultivated one-fourth of an acre and beyond the borders of the other side, three-

fourths of an acre. The house which they had erected likewise extended partially beyond the boundaries of the 40 acres. Upon these facts, they based their claim of adverse possession of the 1000 acre tract of land upon which they had encroached to the relatively insignificant extent just stated. The decision that such facts did not establish title by adverse possession to the 1000 acre tract is not in point here.

Next comes the case which had cited the above-mentioned cases, to wit, *Williams* v. *Hewitt,* 128 Tenn. 689, 164 S. W. 1198, 1199. In that case, as in *Erck* v. *Church,* the claimant inclosed by fence under a mistake as to where the boundary line was certain land to which he did not have title and occupied it continuously for more than twenty years. The Court held upon the authority of the *dicta* in *Erck* v. *Church* that the claimant had obtained title with the statement that such *dicta* in "*Erck* v. *Church* has been recognized as a ruling case upon its facts since the date of its decision", which was 1889. That is, this *dicta* had become a rule of property in Tennessee.

Next comes *Buchanan* v. *Nixon,* 163 Tenn. 364. 43 S. W. (2d) 380, 381, 80 A. L. R. 151, wherein it is said that *Williams* v. *Hewitt* conceded the *dicta* in *Erck* v. *Church* to be "in conflict with the great body of the law in this state." Probably that is a broader statement than was actually intended, because *Williams* v. *Hewitt* pointed out that *Erck* v. *Church* is the case that made the distinction "between an accidental possession held by actual inclosure, and an accidental possession of a part of a large tract, and a claim of actual possession of the entire boundary under color of title".

Notwithstanding its criticism of the *Erck Case*, this Court in *Buchanan* v. *Nixon*, 163 Tenn. 364, 43 S. W. (2d) 380, 80 A. L. R. 151, adhered to the ruling of the *Erck Case* whenever the facts were substantially the same. 163 Tenn. page 368, 43 S. W. (2d) page 381. In doing so, it no doubt recognized, as did *Williams* v. *Hewitt*, that the rule stated by way of *dicta* in the *Erck Case* had become a rule of property in Tennessee.

So the Court of Appeals in *Peoples* v. *Hagaman, supra*, and in the case at bar had no choice other than to follow *Erck* v. *Church* and *Williams* v. *Hewitt, supra*. Nor do we have any choice unless we resort to the unprecedented act of overturning by decision an established rule of property in this State. For obvious reasons, this must be declined. Thus, we concur in both the reasoning and the conclusion of the excellent opinion of the Court of Appeals in the instant case.

Mr. and Mrs. Steele have likewise filed a petition for *certiorari*. Since the conclusion which we have reached is determinative of the case, it is unnecessary to consider their petition.

Both petitions are denied.

PREWITT, J., not participating.