ROBERT LISTER SAVELY, b/n/f Lillian Barbara Swanson, Appellant, v. MILLARD L. BRIDGES and Wife, Ivey Bridges, G. L. Comer, Trustee, and First American National Bank of Nashville, Appellees.—418 S.W.(2d) 472.

Middle Section. May 9, 1967.

Certiorari Denied by Supreme Court August 7, 1967.

Martin & McCracken, Franklin, Ky., and Breckinridge, Vimont & Amato, Lexington, Ky., for appellant.

Harsh, Kelly & Harsh, Gallatin, for appellees, Millard L. Bridges and wife, Ivey Bridges, and G. L. Comer, trustee.

Bass, Berry & Sims, Nashville, for appellee, First American National Bank of Nashville.

Ernest C. Matthews, III, Nashville, for intervening petitioner, Mrs. Ethel Nash.

PURYEAR, J. From a decree of the Chancery Court of Sumner County, Tennessee, dismissing his bill seeking to set aside a certain deed of trust and a series of subsequent conveyances, the appellant, Robert Lister Savely, who was the complainant below, has prayed and perfected his appeal to this Court.

On November 28, 1960, the appellant, a person of unsound mind, by and through his next friend, Lillian Barbara Swanson, filed a bill against the appellees in the Chancery Court of Sumner County, Tennessee.

This bill, which is designated as a petition, alleges that appellant was adjudicated to be a person of unsound mind and committed to Central State Hospital on December 29, 1932, but that he was mentally incompetent for more than five years prior to the date of commitment.

The bill further alleges that on September 30, 1930, appellant conveyed a tract of land containing about 81 acres on Center Point Road in the Fifth Civil District of Sumner County, Tennessee, to J. T. Baskerville, as Trustee, to secure payment of a note in the amount of $1000.00 payable to Mrs. Ferrie Hale; that the trustee died on July 25, 1934, and Harvey L. Brown was appointed as substitute trustee by the Chancery Court of Sumner County in the case of Mrs. Ferrie Hale vs. Robert Lister Savely, Rule No. 1366.

The bill further alleges that on December 29, 1936, such deed of trust was foreclosed and the property sold and conveyed by the substitute trustee to M. B. Comer for the consideration of $1,800.00; that M. B. Comer died and First American National Bank, as executor of his estate, sold the property to G. L. Comer, Trustee of the R. W. Comer and Sons Trust, and that such trustee later sold and conveyed the property to the appellees, Millard L. Bridges and wife Ivey Bridges.

The appellant tendered into Court the sum of $1,800.00, which was the consideration paid for the property by Millard L. Bridges at the foreclosure sale, and the bill alleges that the various conveyances are void or voidable and a cloud upon appellant's title to the property.

The bill prays that the conveyance from Harvey L. Brown, substitute trustee, to Millard L. Bridges and wife and the subsequent conveyances be vacated and set

aside and that the appellees be required to account for the reasonable rental value of the land during the time appellant was deprived of possession thereof and that appellant be restored to possession of such land.

Answers were filed by all of the appellees denying that appellant was entitled to the relief sought even if he were of unsound mind in 1930. In addition to denying that appellant was of unsound mind in 1930, the answers relied upon and pleaded several other defenses including:

(a) Appellant was barred from relief against First American National Bank of Nashville by Section 30-513 of the Tennessee Code Annotated which bars claims against an estate unless filed within nine months from the date of notice to creditors.

(b) The appellees, Bridges and their predecessors, has been in open, notorious and adverse possession of the property involved for more than seven years prior to the filing of this suit, and the appellees, Bridges and their predecessors, owned the property under a recorded grant or conveyance, or other assurance of title purporting to convey in fee, for more than thirty years before this suit was filed. Therefore, appellant was barred by Sections 28-205 and 28-206 of the Tennessee Code Annotated.

(c) The proceeding in the Chancery Court in the case of Mrs. Ferrie Hale vs. Robert Lister Savely, Rule No. 1366, in which appellant was represented by a guardian ad litem, constituted res adjudicata on the question of whether appellant was of sound mind on September 30, 1930 because the Court found in that proceeding that the note and deed of trust in question were executed on September 3, 1930.

(d) Appellant having been represented by a guardian ad litem in 1936 in the proceeding in the Chancery Court of Sumner County, Tennessee, was now estopped to question the validity of the deed of trust, and in addition, since appellant was represented by a guardian ad litem, he is now barred by laches.

(e) Appellant is not entitled to any relief without tendering, in addition to the $1,800.00 paid by M. B. Comer for the property, the amount of the indebtedness secured by the deed of trust, all taxes assessed and paid on the property since 1930, and the value of all improvements placed on the property since 1930.

(f) M. B. Comer died on or about July 1, 1953, which was more than seven years prior to the filing of this suit, and therefore any suit against his estate was barred by Section 28-302 of the Tennessee Code Annotated, which Section bars not only the remedy but also extinguishes the right of action.

The case was tried before the Chancellor upon depositions, documentary evidence and stipulations. As a result of such trial, the Chancellor found in favor of the appellees and entered a decree dismissing the bill, from which appellant has prayed and perfected his appeal to this Court.

The learned Chancellor prepared and filed an excellent memorandum opinion and since we agree with the conclusions therein set forth and cannot improve upon such opinion, we adopt it as our own and quote it herein as follows:

"This is a suit by Robert Lister Savely, who sues by his sister, Lillian Barbara Swanson, as next friend, and seeks to set aside a deed of trust that was executed

by the said Robert Lister Savely on September 3, 1930, and to have set aside and declared void a series of subsequent deeds.

This is a rather large record and the Court has carefully read same and the briefs filed by counsel for all parties and is now ready to dispose of the case.

The record and a preponderance of the testimony establishes the following facts: That prior to July 11, 1930, the complainant and his three sisters were the owners as tenants in common of an 81 acre tract of real estate in Sumner County, Tennessee, and on September 11, 1930 * his three sisters conveyed to him their undivided interest in said land, the consideration for said conveyance being stated in the deed as follows:

'The consideration for this conveyance is the payment to us by Robert L. Savely of the sum of Seven Hundred Dollars ($700.00) each, or Twenty-one Hundred Dollars ($2,100.00) in all, the receipt of which is hereby acknowledged, and the further valuable consideration of the payment of the funeral expenses and all other debts against the estate of W. B. Savely, deceased.'

On September 3, 1930, the said Robert Lister Savely conveyed said real estate to J. T. Baskerville, Trustee, to secure a note to Mrs. Ferrie Hale in the sum of $1,000.00. This deed of trust and the deed to complainant from his sisters were both recorded on September 3, 1930.

On December 29, 1932, the complainant upon the complaint of one J. T. Jackson was by the County Court for Sumner County, Tennessee, adjudged to be a person

* footnote—Apparently this date is a typographical error, since copy of the deed from Lillian Savely et al to Robert Savely, filed in the record is dated July 14, 1930)

of unsound mind and he was committed to the Central State Hospital where he has since remained.

In July 1934 J. T. Baskerville, the Trustee in the Deed of Trust heretofore referred to, died, and in November 1936 a bill was filed in the Chancery Court for Sumner County, Tennessee by Mrs. Ferrie Hale, the holder and owner of the note executed by the complainant, and the bill alleged that the defendant in that cause had been adjudicated to be a person of unsound mind and prayed for the appointment of a Guardian ad Litem. The bill alleged that the note was for borrowed money and was past due and unpaid and prayed for the appointment of a substitute trustee in order that the deed of trust could be foreclosed.

In that cause, Harvey L. Brown was appointed substitute Trustee and on December 29, 1936 the property was sold at the foreclosure sale to M. B. Comer for the sum of $1,800.00. The note on file in the above chancery proceedings shows that on September 3, 1931, one year after the execution of the note, the complainant in this cause paid the interest due.

The record in this cause shows that at the time of the foreclosure the place was in a run down condition and the purchaser, M. B. Comer, took possession after the foreclosure sale and built a barn on it but made very few other improvements.

In July 1953 M. B. Comer died testate and First American National Bank qualified as executor of his will and completed the administration of the estate as required by law.

On the 25th day of February, 1954, the executor of the estate and R. W. Comer & Sons Trust conveyed the

property to the defendants, Millard L. Bridges, and wife, Ivy Bridges, and they have owned and had possession of same since that date.

The present owners of the said real estate, defendants, Bridges and wife, have made valuable improvements on the property, the proof showing that they have expended in excess of $15,000.00 improving same. From time to time they have borrowed money and mortgaged the place and same is at the present time mortgaged to the Springfield Credit Production Corporation.

The bill in this cause was filed November 20, 1960 and alleges that on September 3, 1930, the complainant was of unsound mind and incapable of executing the deed of trust.

The defendants have specifically plead seven (7) years adverse possession under registered assurance of title for more than thirty (30) years as set out in Sections 28-205 and 28-206 T.C.A. Said sections read as follows:

'28-205: *Indefeasible title by possession under assurance of title.*—Any person holding any real estate or land of any kind or any legal or equitable interest therein, and such person and those through whom he claims having been is adverse possession of same for seven (7) years, where said real estate is held and claimed by him or those through whom he claims by a conveyance, devise, grant, a decree of a court of record, or other assurance of title purporting to convey an estate in fee, and such conveyance, devise, grant, or other assurance of title, has been recorded in the register's office of the county in which the land lies for a period of thirty (30) years or more or such decree entered on the minutes of such court for a period

of thirty (30) years or more, is vested with an absolute and indefeasible title to such real estate or interest therein. (Acts 1923, ch. 90, 1; Shan Supp. 4460a1; Code 1932, 8586.)'

\*　　\*　　\*　　\*　　\*　　\*

'28-206. *Possession against persons under disability.*— Where such land or interest therein is held as set out in the preceding section, no person, whether upon disability or not, nor the State of Tennessee, shall commence or sustain an action for the recovery of same in any court. (Acts 1923, ch. 90, 2; Shan Supp., 4460a2; Code 1932, 8587.)'

The Court is of the opinion that these Sections apply to this case, and that the action is barred.

The record discloses that most of those persons who were familiar with the original transaction in 1930 are dead. Mr. Baskerville, who drew the deed of trust and handled the transaction and who had on other occasions represented the complainant in legal matters; Mrs. Ferrie, who loaned the money to the complainant; Mr. Harvey L. Brown, the substitute trustee, and who was the County Court Clerk at the time complainant was committed to the Central State Hospital; Mr. G. L. Comer, who purchased the land at the foreclosure sale; and possibly many others who knew the complainant in 1930 are dead and not available to testify.

It is to protect innocent persons in a situation such as disclosed by this record that these statutes were enacted. The statute says, 'having been in adverse possession of same for seven (7) years where said real estate is held and claimed by him or those through whom he claims by a *conveyance,* devise, grant, a decree of a

court of record *or other assurance of title purporting to convey an estate in fee * * *.'* (Italics added).

■■■■ Adverse possession is only necessary for a period of seven years and when that adverse possession of seven (7) years is coupled with registered assurance of title for thirty years, the claim is barred.

Certainly the deed of trust which conveyed the legal title to the Trustee, his successors and assigns, and with general warranties is a link in the title chain and is a conveyance and an assurance of title. It would be contrary to the intention of the legislature to say that the statute applied to a warranty deed but did not apply to a deed of trust, which is also a conveyance. It is just as easy for witnesses to die and memory to fail as to the facts surrounding the execution of a deed of trust as it is in the execution of a warranty deed, and it was to protect against such contingencies that the statutes were passed.

■■■ In Tennessee a deed absolute on its face may be shown to be a mortgage but our courts have held that after a lapse of thirty years this cannot be done. Van Dyke v. Inman, [59 Tenn.App. 493] 362 S.W.(2d) 795.

If it were not for the intervention of the thirty year statute, complainant's bill could not be sustained because complainant has not established by a preponderance of the proof that on September 3, 1930 the complainant was a person of unsound mind.

Most of complainant's proof consists of the testimony of the sisters, and while it is unnecessary to quote from their testimony, their depositions are contradictory of each other and in the testimony of each there is a great deal of immaterial and irrelevant evidence. The

deed from the three sisters in July 1930 speaks for itself and after a lapse of more than thirty years they cannot now be heard to contradict the recitals in that instrument. At the time the deed of trust was executed and prior thereto complainant was operating his farm, he was transacting his own business, he employed a lawyer to defend him and his actions were not questioned. It is true that the record discloses that he was eccentric, peculiar, antisocial and hard to get along with but this is not evidence that he did not fully realize that he was borrowing money and that he had to pay it back. He paid the interest at the end of the first year. The commitment papers show that in December, 1932 his mental condition was of short duration.

Dr. Brackin did not know the complainant until December, 1932, more than two years after the deed of trust had been executed, and he testified that he based his opinion upon what the complainant himself told him in 1932.

It is alleged in the bill that at the foreclosure sale in 1936 the property brought an inadequate price. Complainant has failed to sustain this allegation. The record discloses that the farm was at that time in a run down condition and the Court will take judicial knowledge that in 1936 land values were low and money was scarce. By 1954, after World War II when defendant Bridges and wife, purchased from the Comer estate, land values had more than doubled.

Because of these findings it is unnecessary to pass upon the other special pleas relied upon by the defendants.

It therefore results that complainant's bill is dismissed. An intervening petition has been filed in this cause on behalf of Mrs. Ethel Nash, in which it is alleged that

the $1,800.00 deposited by Mrs. Lillian Barbara Swanson does in fact belong to Mrs. Nash, and the record discloses that this is a fact. The decree will provide that when complainant has paid the cost of this cause, the funds in the hands of the Clerk and Master will be paid to the intervening petitioner.

This memorandum will be filed as a part of the technical record but need not be copied on the minutes, and a decree dismissing complainant's bill will be prepared and entered on the minutes of the court.

This the 17th day of May, 1965.

/signed/ W. M. LEECH

CHANCELLOR.''

(Tr. pp. 48-54)

The appellant has filed several assignments of error, all of which can be embodied in the single assertion that the evidence preponderates against the decree of the Chancellor.

Since we have concluded that the evidence does not preponderate against the Chancellor's decree, but, in fact, preponderates in favor of it, we find no merit in the assignments of error.

Since the learned Chancellor found that two of the defenses relied upon by appellees were good and, therefore, dismissed the suit without considering the other defenses, we will only discuss these two defenses, which are as follows:

1. A preponderance of the evidence does not show that the appellant was of unsound mind when he executed the deed of trust to J. T. Baskerville, trustee, on September 3, 1930.

384

2. That the appellees, Millard Bridges and wife Ivey Bridges, and their predecessors in title had been in open, notorious and adverse possession of the land involved for more than seven years prior to the filing of the suit and that they and their predecessors owned the property under a recorded conveyance or other assurance of title purporting to convey in fee, which assurance of title had been recorded in the Register's Office of Sumner County, Tennessee, for more than thirty years prior to the filing of the suit.

There is at least one outstanding and fundamental weakness in the factual aspect of appellant's case on the question of insanity, which is mentioned in the Chancellor's opinion, but he did not elaborate upon it at any great length.

About two months prior to execution of the deed of trust in question, appellant's three sisters (including the next friend by and through whom this suit was filed) executed a deed by which they conveyed their three-fourths undivided interest in the land in question to the appellant. (Tr. pp. 76-77).

This deed recites a consideration of $2,100.00 ($700.00 to each sister) and further consideration of the payment by the appellant of the funeral expenses and other debts against the estate of his father, W. B. Savely. At least one of the sisters (Mrs. Oakes) testified that appellant gave her a note for the sum of $700.00 to be paid to her, which note was signed by appellant and which she later negotiated to Mr. J. T. Baskerville, appellant's attorney at that time.

This action upon the part of appellant's sisters is inconsistent with their testimony that he was of unsound mind at the very time this deed was executed which

conveyed their interest to him. They attempt to explain this inconsistent conduct by saying they wanted to help him and give him a feeling of security by conveying their interest in the farm to him, thereby entrusting him with the management and control thereof. This explanation simply will not stand the test of sound logic.

T.C.A. Sections 28-205 and 28-206 do not save any persons from the operation thereof. It is quite clear to us that the Legislature expressly intended to save no person from the operation of Section 28-205, especially in view of the saving portion of Title 28, which is embodied in Sections 28-107, 28-108 and 28-109. The first two of these Code Sections provide as follows:

"28-107. *Persons under disability on accrual of right.* —If the person entitled to commence an action is, at the time the cause of action accrued, either (1) within the age of twenty-one (21) years, or (2) of unsound mind, such persons, or his representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceed three (3) years, and in that case within three (3) years from the removal of such disability."

"28-108. *Cases in which disability not an excuse.*—The provisions of sec. 28-107 shall not apply to actions on a statute for a penalty or forfeiture, or to actions against the estate of a deceased person brought more than seven (7) years from the death of the deceased, and the time the cause of action accrued, *nor to cases provided for in sec. 28-205.*" (Emphasis supplied)

Therefore, it is clear to us, especially in view of 28-108 and 28-206, that Section 28-205 is a statute of repose. In

cases falling within its terms, it has the effect of vesting absolutely the legal title to the land in the person holding adverse possession thereof during the period of limitation fixed by the statute (seven years) and under assurance of title registered for a period of thirty years, and was enacted for the purpose of putting an end to litigation of stale cases, the evidence in which may have disappeared with the passing of time.

In Thompson on Real property, it is said:

"There is authority for the point where the statute barring actions for the recovery of real property makes no exception in favor of persons under disability, the fact that the owner of the land was under disability at the time the adverse possession commenced does not suspend the running of the statute in his favor during the period of disability." Thompson on Real Property, Vol. 5, p. 592, Sec. 2556.

Our statute (T.C.A. Section 28-206) goes even further than the statutes mentioned in Thompson which make no exception for persons under disability, and specifically provides that all persons are barred by such statute, whether under disability or not.

Were it not for the provisions of T.C.A. Sections 28-205 and 28-206, the cases of Davis v. Louisville & Nashville Railroad Co., 147 Tenn. 1, 244 S.W. 483, 488; Moore v. Brannan, 42 Tenn.App. 542, 304 S.W.2d 660, and Moffitt v. Meeks, 29 Tenn.App. 609, 199 S.W.2d 463, would probably apply to the adverse possession and limitation of action phase of the instant case, but these cases are not in point here, since the facts thereof did not bring them under the provisions of 28-205 and 28-206.

Davis v. Louisville & Nashville Railroad Co., supra, deals with the question of whether or not the railroad had acquired a prescriptive right to flood land by adverse user and the Court correctly held therein that in order for the railroad to acquire such right by prescription, it must show affirmatively that during the prescriptive period the owners of the servient estate were competent to convey title. This ruling has no bearing in the instant case because T.C.A. 28-206 provides that 28-205 operates even against persons under disability.

For the same reason, Moore v. Brannan, supra, and Moffitt v. Meeks, supra, are not in point.

Moore v. Brannan, supra, is an ejectment suit and while in that case, the Court discussed various sections of the code dealing with limitation of real actions the case actually involved T.C.A. 28-203 and not 28-205. With reference to the latter mentioned section the Court said:

"T.C.A. sec. 28-205 confers a right and operates to vest in the adverse holder under color of title a legal title to land adversely held for seven years, provided the color of title had been recorded in the county where the land lies for a period of thirty years; or the decree of a court under which the adverse holder claims title had been entered on the minutes of the court for a period of thirty years.

T.C.A. sec. 28-205 differs from T.C.A. sec. 28-201 in this respect: T.C.A. sec. 28-201 deals with land granted by the state and requires only seven years' adverse possession of the land under recorded assurance of title of such land to perfect legal title in the adverse holder to the extent of the boundaries set forth in the color of title under which the land is held, even though the possession is located only on a part of the land included

in the boundaries of the adverse holder's assurance of title.

T.C.A. sec. 28-205 does not require proof that the land is granted land, but does require thirty years' registered color of title and seven years' adverse possession under registered color of title. The thirty years registration carries the presumption that the land was granted by the state.

Briefly summarized, T.C.A. sec. 28-201 and T.C.A. sec. 28-205 deal with the right and convey title to the adverse holder; and T.C.A. sec. 28-202 and T.C.A. sec. 28-203 deal with defensive rights and the possessions under these latter two statutes can be used by the adverse holder defensively only.'' Moore v. Brannan, supra, 42 Tenn.App. pp. 564, 565, 304 S.W.2d p. 670.

The learned Chancellor held, in effect, that the deed of trust from Savely to J. T. Baskerville, Trustee, is such ''an assurance of title'' purporting to convey an estate in fee as is contemplated by the thirty year statute of limitations codified as T.C.A. 28-205. (Tr. p. 52)

We think the deed of trust is such an assurance of title purporting to convey an estate in fee, and falls within the descriptive terms of T.C.A. Section 28-205.

This conclusion is supported by Bertha v. Smith, 172 Tenn. 180, 110 S.W.2d 474. Bertha v. Smith was an ejectment suit dismissed by the Chancellor for the reason that it appeared the complainant had acquired his title or claim to the land sued for since the passage of Chapter 43, of the Acts of 1919, and that at the time of the bringing of the suit there were unpaid taxes assessed against this land. The Act of 1919 in question provided as follows:

"No suit shall be brought or maintained in any court, either at law or in equity, to recover the title to any land, or to stay waste, or quiet title, until all unpaid taxes assessed against any land, or to the owner or claimant, proposing to bring such suit, or assessed to his predecessor in title, together with all legal interests, penalties, and costs, shall have been paid for a period of seven years, immediately next before the bringing of such suit."

"The preceding section shall only apply to those acquiring title to lands, or claims to lands, by deed, or otherwise, after 1919." Bertha v. Smith, supra, p. 182, 110 S.W.2d p. 475.

The argument made by complainant on appeal was that he not only acquired a claim to the land in 1914, but that legal title then became vested in him by the execution and delivery of a mortgage.

This mortgage was executed November 14, 1914, by one Lewis Horwitz, then owner of the land, and duly registered on November 22, 1914. It recites an indebtedness of $2,500.00 evidenced by note due one year after date, with interest, and provided that if this debt be paid according to its terms, with all other charges, etc., incurred by the holder, the conveyance will become null and void.

In passing on this question the Supreme Court said:

"It appears that the condition was not complied with, but that default took place before 1919, and a court foreclosure followed, as above mentioned.

It will be observed that by its express terms the Act of 1919 applies alone to those 'acquiring title to lands, or claims to lands, by deed or otherwise, after 1919.'

Clearly, complainant acquired both a claim and the legal title to this land long before 1919.

Upon execution and delivery of such a mortgage as this, *the legal title to the land passes at once to the mortgagee,* and he is entitled to the immediate possession, unless the instrument contains a provision to the contrary.'' (citing cases) (emphasis supplied).

*"Complainant acquired the legal title to these lands in 1914,* as has been seen, with the right of immediate possession, even before default, according to the terms of the mortgage. Does the fact that the instrument was a mortgage take it out of the descriptive terms of the statute? As a mortgagee, complainant acquired both a title and a claim; if not 'by deed,' then clearly 'otherwise.' '' (emphasis supplied) Bertha v. Smith, supra, pp. 183, 184, 110 S.W.2d p. 475.

The decree of the trial Court dismissing complainant's suit was reversed in that case.

The foregoing case was cited in Harris v. Buchignani, 199 Tenn. 105, 285 S.W.2d 108, wherein the writer of that opinion, Justice Burnett, said:

"In this State the mortgage on the property in question or trust deed as we denominate it vests the title to the land described in the trust deed in the trustee and when there is a default under the terms of this trust and this is foreclosed, the deed of the trustee to the purchaser under this foreclosure gets good title thereto and such a deed is a proper link in its chain of title.'' Harris v. Buchignani, supra, 199 Tenn. p. 113, 285 S.W.2d p. 111.

Also in Howell v. Tomlinson, et al., 33 Tenn.App. 1, 228 S.W.2d 112, this Court, speaking through Judge Felts, said:

"The law of Tennessee has kept much of the common-law theory of mortgages. While it follows the equitable theory in many important particulars, it still adheres to the basic common-law notion that a *mortgage vests the mortgagee with the legal title to the land* and the right to immediate possession." (emphasis supplied) Howell v. Tomlinson, supra, p. 10, 228 S.W.2d p. 116.

The only provision in the deed of trust from Savely to Baskerville relative to possession of the premises is the following:

"Now, if I pay or cause to be paid said note in full, at or before maturity, then this mortgage shall be null and void, but should I fail to do so, then the said Baskerville, Trustee, or any successor of his, is authorized and empowered to sell said land, to the highest bidder, for cash, at the court house door in Gallatin, Tennessee, after advertising for thirty days in some newspaper published in Gallatin, Tennessee, free from all homestead, dower and exemption rights and the right of the equity of redemption, all said rights being expressly waived by me for the purposes of this mortgage, and he is authorized to make to the purchaser at said sale a general warranty deed to said land, and I agree to give immediate possession thereof or to become the tenant at will of the purchaser, subject to be dispossessed at any time by writ of unlawful detainer." (Tr. p. 89)

The foregoing provision implies that Savely would be allowed to retain possession of the premises at least until

default but, in our opinion, possession during the period of time the deed of trust was in effect is not an important factor in the case, since the thirty year limitation statute (T.C.A. 28-205) only requires seven years adverse possession and this was accomplished after the property was conveyed by substitute trustee to M.B. Comer on December 29, 1936.

The record also contains a stipulation as to such adverse possession for more than seven years, which stipulation is as follows:

### STIPULATION

It is stipulated that from December 29, 1936 the date of a deed from HARVEY L. BROWN, SUBSTITUTE TRUSTEE, to M. B. COMER, to February 4, 1963, said M. B. COMER, his estate, and the Defendants, MILLARD L. BRIDGES AND WIFE, have been in open, notorious and adverse possession of the property in controversy and have had the peaceful possession of same, except for this suit.'' (Tr. p. 75)

Although, in Bertha v. Smith, supra, the Supreme Court did not use the words "estate in fee" in holding that title passed from mortgagor to mortgagee upon execution and delivery of the mortgage, but did use the term "legal title."

We think the words "legal title" used by the Supreme Court in Bertha v. Smith, supra, included "an estate in fee" and, that in the instant case, Savely conveyed "an estate in fee" to Baskerville, as trustee, upon the execution of the deed of trust dated September 3, 1930, and recorded on that same day in the Register's Office of Sumner County, Tennessee.

Thompson on Real Property says:

"Sometimes the word 'title' is used in a general sense, as including any title or interest; but 'title' in common acceptance, and when used in reference to real property, implies an estate in fee." Thompson on Real Property, sec. 2395, Vol. 5, p. 148.

For the reasons herein set forth, we think the Chancellor reached the correct result and his decree is affirmed.

Since such decree provides for the payment of certain funds to the intervening petitioner, Mrs. Nash, the case is remanded to the Chancery Court of Sumner County, Tennessee, for the purpose of authorizing distribution of such funds to the intervening petitioner. All of the costs of this appeal will be paid by appellant.

Shriver and Todd, JJ., concur.